[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-14913

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 6, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00229-CV-J-20-MMH

JESSIE EARL PURVIS,

Petitioner-Appellant,

versus

JAMES CROSBY, Secretary
Florida Department of Corrections,
ATTORNEY GENERAL OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 6, 2006)**

Before CARNES, HULL and PRYOR, Circuit Judges.

CARNES, Circuit Judge:

Jessie Earl Purvis is a convicted child molester seeking to have his conviction set aside under 28 U.S.C. § 2254 because his trial counsel did not object when the state trial court cleared the courtroom of most of the public during the young victim's testimony. The district court, like the state courts, rejected Purvis' claim that his attorney's inaction deprived him of his constitutionally guaranteed right to effective assistance of counsel, and we granted a certificate of appealability on the issue. We address, among other things, the question of whether the structural nature of an error that counsel failed to preserve alters the prejudice requirement for an ineffective assistance of counsel claim.

## I.

Before the victim, who was then thirteen years old, took the stand to testify at Purvis' jury trial, the following exchange took place.

> Mrs. Christine [Prosecutor]: Judge, at this time I'd like to make a motion to have the courtroom cleared because we'll be presenting the testimony of the minor victim.
>
> The Court: Okay. Are there persons likewise you wish to –
>
> Mrs. Christine: This is her aunt and uncle.
>
> The Court: All right. You have no objection to them remaining?
> Mrs. Christine: No.
>
> The Court: Okay.

2

Mr. Bell [Defense Counsel]:  Judge, if her -- Judge, we maybe want to -- I may have an objection to some of the individuals if I could be heard outside the presence of the jury.

The Court:  All right.  I was trying to get that done before we brought them back.  Please step out for just a moment more.
(Whereupon, the jury retired to the jury room and the further proceedings were had outside the presence of the jury:)

The Bailiff:  Jury is in the jury room, Your Honor.

Mr. Bell:  Judge, I don't know who -- one of the -- a couple of these people are her aunt and uncle and I don't have any problem with that. If one is her psychological counselor, we had had [sic] a hearing on the availability of these records and --

Mrs. Christine:  It's not.

Mr. Bell:  Okay.

Mrs. Christine:  It's not.

The Court:  Okay.

Mr. Bell:  I just didn't want her counselling [sic] her.  That's fine, Judge.

The Court:  That's fine.  All right.  Let's call the witness in and let's get the witness sworn.

The record does not reflect how many spectators were in attendance before the courtroom was cleared.

The parties seem to agree that, as the quoted exchange indicates, at least the victim's aunt and uncle were allowed to remain in the courtroom.  Purvis alleges

3

that his adult son and his daughter-in-law had attended every court proceeding in the case, and they were in attendance at the time of the court's order to clear the courtroom; he wanted them to stay, but his attorney told him that they had to leave, and they did. According to the State, while the trial record reflects that the prosecutor asked for the courtroom to be closed, the record does not show that the judge ordered any spectator to leave or that any spectators were in fact excluded during the victim's testimony. The State concedes that Purvis' son and daughter-in-law may have been at the trial and speculates that his attorney decided to let them be excluded for strategic reasons. Because of the procedural posture of the case, we take Purvis' allegations to be true. As a result, the facts for our purposes are that during a crucial stage of the trial at least some members of the public were required to leave the courtroom while some others were allowed to stay. We take it as given that the court ordered a partial closure, trial counsel did not object, and his failure to do so was not strategically motivated.

During her testimony the victim, who was eleven years old at the time the events began, described the sexual abuse in the necessary detail. The jury obviously credited her testimony, because it convicted Purvis as charged on all three counts: (1) capital sexual battery on a child under twelve, in violation of Florida Statute § 794.011(2)(a); (2) sexual activity with a child twelve years or

4

older by a person in familial or custodial authority (the victim was the daughter of Purvis' live-in girlfriend at the time), using digital penetration, in violation of § 794.011(8)(b); and (3) sexual activity with a child twelve years or older using penile union with her vagina, in violation of § 794.011(8)(b). Purvis was sentenced to life in prison on one count and twenty years on each of the other two counts. He was also declared a sexual predator.

## II.

In his direct appeal Purvis was represented by different counsel, the Office of the Public Defender for the state judicial circuit where the trial had occurred. He raised four issues on appeal, none of which related to the closure of the courtroom or his trial counsel's performance. The Fifth District Court of Appeal affirmed Purvis' conviction but remanded for correction of the sentencing score sheet to reflect a different number of points for victim injury. Purvis v. State, 783 So. 2d 292 (Fla. 5th DCA 2001). The remand apparently did not affect the actual sentence imposed.

Purvis then filed a motion for post-conviction relief in the state trial court pursuant to Florida Rule of Criminal Procedure 3.850. In that motion he asserted nineteen claims, a couple of which are relevant to the issue before us. One of them was that the closure of the courtroom violated his Sixth Amendment right to

5

a public trial. That claim was, the state court concluded, procedurally barred because it could have been raised on direct appeal. In explaining that conclusion the court noted that "[a]lthough a public trial is a fundamental, constitutional right, the State, in the instant case, was seeking to close the trial in a constitutionally valid manner pursuant to [Fla. Stat.] § 987.16," and "[t]o the extent that there was any error during the State's attempt to comply with the statute, it was an error in the trial process itself rather than a structural defect" (internal citations and quotation marks omitted). The court held that "the alleged errors are not fundamental and not cognizable in a 3.850 motion."

Purvis also put forward in the state collateral proceeding the same ineffective assistance claim now before us, contending that he was denied effective assistance of counsel in violation of the Sixth Amendment by his trial counsel's failure to object to the closure of the courtroom during the testimony of the victim. The state trial court denied that claim, which it found "legally insufficient in that it does not set forth specific allegations showing a reasonable likelihood that the alleged exclusion of his son and daughter-in-law during the victim's testimony impacted the outcome of the trial." The mere possibility of prejudice was deemed insufficient to show actual prejudice. Responding to Purvis' contention that the partial closure of the courtroom was structural error,

6

the court cited some Florida appellate court decisions for the proposition that the partial closing of a courtroom may not be fundamental error. See Alvarez v. State, 827 So. 2d 269, 274 (Fla. 4th DCA 2002) (citing Johnson v. United States, 520 U.S. 461, 117 S. Ct. 1544 (1997)); see also Hobbs v. State, 820 So. 2d 347, 350 n.3 (Fla. 1st DCA 2002) (citing Evans v. State, 808 So. 2d 92, 105 (Fla. 2001)). It added that "[e]ven if this were a structural error, not all structural errors are fundamental and thus not all structural errors require a new trial." The court also rejected Purvis' other claims and denied his Rule 3.850 motion for relief.

In his appeal from that denial, Purvis argued that if Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), required him to show that he had been prejudiced by his trial counsel's failure to object to the closure of the courtroom, he had done so. His reasoning was that an objection by counsel would have properly preserved the issue, allowing him to obtain a reversal of his conviction on appeal. In addition, Purvis argued that relief based on denial of the right to a public trial did not require a showing of prejudice because it was a structural error, and structural errors justify reversal even without any showing of prejudice. The failure of his trial counsel to object, he said, "was its own prejudice." The Fifth District Court of Appeal implicitly disagreed, affirming without opinion the denial of post-conviction relief.

Purvis' next step was to file in federal district court a petition for a writ of habeas corpus under 28 U.S.C. § 2254. That petition, as amended, contained thirteen claims, including the claims that the closure of the courtroom had denied him his Sixth Amendment right to a public trial and that his trial counsel's inaction regarding the closure violated his Sixth Amendment right to effective assistance of counsel. The State's response asserted procedural bar.

The district court concluded that the substantive claim was procedurally barred because it had not been raised on direct appeal. It also found that Purvis had not shown cause or prejudice to excuse the procedural default and that the fundamental miscarriage of justice exception was not applicable. As for the ineffective assistance of counsel claim, the district court thought it unclear whether the state trial court in the collateral proceeding had applied a procedural bar, but it gave Purvis "the benefit of the doubt and assume[d] that the trial court adjudicated the claim on the merits." Having done that, the district court agreed with the state court that, in light of Strickland, the claim failed because Purvis had not shown any prejudice from his counsel's failure to object. For that reason, the district court concluded that the state court's decision rejecting the ineffective assistance claim was not contrary to, and did not involve an unreasonable

8

application of, clearly established federal law and was not based on an unreasonable determination of the facts in light of the evidence.

Purvis filed a motion in the district court under 28 U.S.C. § 2253(c) asking for a certificate of appealability (COA) with respect to his claims relating to the closure of the courtroom. The district court denied that motion, but we ultimately granted a certificate of appealability on these two issues:

> Whether trial counsel was ineffective for failing to object to the state's request and the trial court's order to close the courtroom during the child victim's testimony?

> If so, whether trial counsel's ineffective assistance constitutes sufficient cause and prejudice to excuse appellant's procedural default in failing to raise the following claims at trial or on direct appeal: appellant was denied (1) the right to a public trial by the closure of the courtroom, and (2) due process because the victim did not request that the courtroom be closed, and the court did not comply with the state statute governing closure of the courtroom?

Whichever way we decide the first issue will moot the second one, so we will begin and end with the first one.

### III.

The most efficient way for us to decide the ineffective assistance of counsel issue presented in this appeal is to assume away three subsidiary issues and get straight to the prejudice question. We will assume that the closing of the courtroom during the victim's testimony was constitutional error under Waller v.

9

Georgia, 467 U.S. 39, 104 S. Ct. 2210 (1994), thereby putting aside any questions about whether it was proper under the test set out in the Waller decision. We will also assume that trial counsel's failure to object to the partial closure of the courtroom was "outside the wide range of professionally competent assistance," Strickland, 466 U.S. at 689, 104 S. Ct. at 2065 (1984), thereby putting aside any questions about the performance prong of the ineffective assistance of counsel claim. Finally, we will assume that the state post-conviction court's phrasing of the prejudice test as whether there is "a reasonable likelihood" that counsel's error "impacted the outcome of the trial," instead of using the more technically accurate "a reasonable probability of a different result" standard, see id. at 694, 104 S. Ct. at 2068, takes the case outside the scope of 28 U.S.C. § 2254(d)(1). This third assumption puts aside the question of whether we owe any deference to the state court decision.

Even with those three assumptions, we reach the same result as the state court. Purvis loses on the ineffective assistance claim because he has not established that he was prejudiced by his trial counsel's failure to object to the closure of the courtroom. To establish prejudice based on a trial counsel's error: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

10

different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. When we are considering defective performance at the guilt stage, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695, 104 S. Ct. at 2068–69.

Purvis cannot show that an objection from his counsel would have caused the factfinder to have a reasonable doubt about his guilt. If counsel had objected in a timely fashion and had persuaded the trial judge not to partially close the courtroom, there is no reason to believe that would have changed the victim's testimony in a way which would have created a reasonable doubt in the jury's mind. The victim could just as well have been a more sympathetic or credible witness if forced to testify publically. We do not know, and when we do not know the party with the burden loses, and here that party is Purvis. See Strickland, 466 U.S. at 694, 104 S. Ct. at 2068 ("The defendant must show . . . .")

Against this logic Purvis argues that an objection by his trial counsel would have preserved the issue for appeal and led to a reversal of his conviction, which would have been a different result from the affirmance that occurred. There are two flaws with this argument. One is its assumption that the trial judge would

11

have overruled an objection if one had been made. There is as much reason to believe that pointing out the error of his ways to the trial judge would have caused him to mend those ways, thereby depriving Purvis of the issue on appeal. The second and more fundamental flaw in this argument is that it focuses on the outcome of the appeal, not of the trial. The Supreme Court in Strickland told us that when the claimed error of counsel occurred at the guilt stage of a trial (instead of on appeal) we are to gauge prejudice against the outcome of the trial: whether there is a reasonable probability of a different result at trial, not on appeal. Id. at 694–95, 104 S. Ct. at 2068–69.

Our decision in Davis v. Crosby, 341 F.3d 1310 (11th Cir. 2003), is not to the contrary. There trial counsel objected during voir dire to the Batson error that was being committed but when his objection was rejected, counsel failed to take the next step of renewing that objection after the conclusion of voir dire; in the Florida courts that is a necessary step before the issue may be reviewed on appeal. Id. at 1312. This Court held that because the failure of counsel was solely in his role as appellate counsel at trial (those are not the words we used in Davis, but it is what we meant), the prejudice inquiry should focus on the effect that counsel's omission at trial had on the appeal. Id. at 1315–16.

12

Our reasoning and the result in <u>Davis</u> arguably were pushing things given what the Supreme Court said in <u>Strickland</u> about measuring the effect of counsel's errors at the guilt stage of a trial against the result of the trial instead of the appeal. Perhaps mindful of that, we drew our holding in <u>Davis</u> narrowly. We stressed in <u>Davis</u> that it was a case involving "peculiar circumstances" where the only effect of trial counsel's error was on the appeal, and that it was not the usual case where counsel had failed to bring an issue to the attention of the trial court at all. 341 F.3d at 1315. We carefully limited our holding to situations "when a defendant raises the unusual claim that trial counsel, while efficacious in raising an issue, nonetheless failed to preserve it for appeal." <u>Id</u>. at 1316.

We distinguished in <u>Davis</u> our prior decision in <u>Jackson v. Herring</u>, 42 F.3d 1350, 1361–62 (11th Cir. 1995), where the failure to raise the <u>Batson</u> issue at all during the trial was held to be a trial stage error with prejudice to be measured against effect on the reasonable doubt determination. We explained in <u>Davis</u>: "Unlike the situation in <u>Jackson</u> where defense counsel remained absolutely silent as [the] prosecutor . . . struck all blacks from the venire, Davis's trial counsel ably brought the state's possibly unconstitutional conduct to the trial court's attention" and then failed to preserve the error for appeal. <u>Davis</u>, 341 F.3d at 1315 (internal marks and citation omitted).

13

The case before us now is on the <u>Jackson</u> side of the <u>Jackson</u>/<u>Davis</u> line, because trial counsel did not raise at trial, ably or otherwise, a constitutional issue related to closing the courtroom and then fail to take an additional technical step required to preserve the issue. This is not the "unusual case" involving the "peculiar circumstances" where counsel recognized and pressed an issue before the trial court and then neglected to take some step that is relevant only to the appellate stage. This is the more typical ineffective assistance of trial counsel case where the claim is that trial counsel did not raise the issue at all. The broad, generally applicable rule of measuring prejudice in terms of impact on the result of the trial instead of on the result of the appeal, which is set out in <u>Strickland</u> and followed in decisions like <u>Jackson</u>, applies; the razor thin exception recognized in the <u>Davis</u> case does not.

We turn to one last question, raised by Purvis' final argument. At least when the closure is full, an error in removing the public from the courtroom during a trial is a "structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." See <u>Arizona v. Fulminante</u>, 499 U.S. 279, 310, 111 S. Ct. 1246, 1265 (1990). For that reason, the Supreme Court has held that a defendant who properly preserves the issue at trial and presents it on direct appeal is not required to establish that he was specifically

14

prejudiced by the closure. Waller, 467 U.S. at 49–50 & n.9, 104 S. Ct. at 2217 & n.9 (1984).

Here the closure was not complete. It was during the testimony of only a single witness, albeit the most important witness against the defendant, and at least two members of the public were allowed to remain in the courtroom. If a partial closure of the courtroom like this is a structural error or defect—and we are assuming for this discussion that it is—the question is whether a habeas petitioner must show prejudice in order to prevail on a claim that his trial counsel was ineffective for failing to object to the closure. The Waller decision does not answer this question because it came in a direct appeal presenting the pure closure issue, not in a collateral attack on the conviction presenting an ineffective assistance of counsel claim stemming from the failure to object to the closure. It is one thing to recognize that structural errors and defects obviate any requirement that prejudice be shown on direct appeal and rule out an application of the harmless error rule in that context. It is another matter entirely to say that they vitiate the prejudice requirement for an ineffective assistance claim.

The Supreme Court in Strickland instructed us that in all but three exceptional circumstances prejudice must be shown before an ineffective assistance of counsel claim merits relief. Describing two of those circumstances,

15

the Court said that: "In certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance." Strickland, 466 U.S. at 692, 104 S. Ct. at 2067 (citing United States v. Cronic, 466 U.S. 648, 659 & n.25, 104 S. Ct. 2039, 2046–47 & n.25 (1984)). The Court explained that, "[p]rejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost," and besides, denial of the right to counsel and interference with it "involve impairments of the Sixth Amendment right that are easy to identify and, for that reason and because the prosecution is directly responsible, easy for the government to prevent." Id, 104 S. Ct at 2067.

The only other ineffective assistance circumstance in which the prejudice requirement does not apply full bore, the Court indicated in Strickland, is the one where counsel is burdened by conflicting interests arising from multiple representation situations like that involved in Cuyler v. Sullivan, 446 U.S. 335, 100 S. Ct. 1708 (1980). If counsel's performance is affected because of that type of conflict of interest, there is "a similar, though more limited, presumption of prejudice." Strickland, 466 U.S. at 692, 104 S. Ct. at 2067. The presumption of prejudice is warranted in the conflict situation because counsel has breached "the

16

duty of loyalty, perhaps the most basic of counsel's duties." Id. Moreover, "[g]iven the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, see, e.g., Fed. Rule Crim. Proc. 44(c), it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest." Id.

The Supreme Court instructed us in Strickland that aside from those three exceptions—actual or constructive denial of counsel altogether, certain types of state interference with counsel's assistance, and conflicts of interest—prejudice must be shown:

> [A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice. The government is not responsible for, and hence not able to prevent, attorney errors that will result in reversal of a conviction or sentence. Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. They cannot be classified according to likelihood of causing prejudice. Nor can they be defined with sufficient precision to inform defense attorneys correctly just what conduct to avoid. Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another. Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense.

17

466 U.S. at 693, 104 S. Ct. at 2067. The Court then defined the requisite adverse effect or prejudice requirement in these terms: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S. Ct. at 2068.

We cannot hold that attorney error in failing to object to the closing of the courtroom is so likely to result in prejudice that we will presume it, unless we are willing to defy the Supreme Court's specific admonition that when it comes to deciding ineffective assistance claims: "[Attorney errors] cannot be classified according to likelihood of causing prejudice." Strickland, 466 U.S. at 693, 104 S. Ct. at 2067. We cannot dispense with the prejudice requirement for attorney error of this type without defying the Supreme Court's clear holding that except in three limited circumstances, which are not present here, a defendant must show that any error his counsel committed "actually had an adverse effect on the defense." Id. That means he must prove a reasonable probability of a different result. Id.

Our conclusion that a showing of prejudice is required for an ineffective assistance claim stemming from the failure to object on Waller grounds is supported, and probably compelled, by our decision in Hollis v. Davis, 941 F.2d

18

1471 (11th Cir. 1991). That case involved a failure to object to the systematic exclusion of blacks from grand and petit juries. Id. at 1474. Systematic exclusion is a structural error. Fulminante, 499 U.S. at 310, 111 S. Ct. at 1265 (recognizing that systematic exclusion from grand juries on the basis of race is a structural defect affecting the framework of the trial, which is not subject to the harmless error rule); Avery v. Georgia, 345 U.S. 559, 561, 73 S. Ct. 891, 892 (1953) (petit jury). For that reason we recognized in Hollis that if an objection had been made and then pursued on appeal, a reversal of the conviction would have been in order even without any showing of prejudice. 941 F.2d at 1476 ("The systematic exclusion of blacks from the juries would require relief without a showing of actual prejudice from the errors.").

Even recognizing that, we still concluded in Hollis that because the error had not been raised at trial the petitioner was required to show both cause and actual prejudice in order to overcome the resulting procedural bar. 941 F.2d at 1476, 1483. The cause asserted by the petitioner in that case was ineffective assistance of counsel. Id. at 1476. We held that in order to establish that the failure to raise the structural defect was the result of ineffective assistance, "the inept representation also must have prejudiced the accused's defense." Id. at 1478 n.7. Explaining what that meant, we said the petitioner had to show that "there is

19

a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 1480 (internal marks omitted). Our Hollis decision establishes as the law of this circuit that an ineffective assistance of counsel claim based on the failure to object to a structural error at trial requires proof of prejudice.

What we concluded in Hollis is entirely in line with Francis v. Henderson, 425 U.S. 536, 542, 96 S. Ct. 1708, 1711 (1976), which held that a showing of actual prejudice is necessary to overcome a procedural bar arising from the failure to object to what was a structural error at trial. The error raised in the Francis case, which involved a 28 U.S.C. § 2254 attack on a state court conviction, was the unconstitutional systematic exclusion of blacks from the grand jury which, as we have already noted, is a structural error. Id. at 538, 96 S. Ct. at 1709. The petitioner argued that he should not be required to prove actual prejudice, but the Supreme Court unequivocally rejected that argument: "In a collateral attack upon a conviction that rule [of Davis v. United States, 411 U.S. 245, 93 S. Ct. 1577 (1973)] requires, contrary to the petitioner's assertion, not only a showing of 'cause' for the defendant's failure to challenge the composition of the grand jury before trial, but also a showing of actual prejudice." Francis, 425 U.S. at 542, 96 S. Ct. at 1711. In a footnote attached to that statement of its holding, the Supreme

20

Court quoted with approval this statement from its Davis decision: "The presumption of prejudice which supports the existence of the right is not inconsistent with a holding that actual prejudice must be shown in order to obtain relief from a statutorily provided waiver for failure to assert it in a timely manner." Id. at 542 n.6, 96 S. Ct. at 1711 n.6 (citing Davis, 411 U.S. at 245, 93 S. Ct. at 1584).

The Davis case involved a 28 U.S.C. § 2255 collateral attack on a federal conviction based on a claim that blacks had been systematically excluded from the grand jury. 411 U.S. at 235, 93 S. Ct. at 1579. The Supreme Court held that the claim of error was procedurally barred because the claim had not been raised before trial as required by Fed. R. Crim. P. 12(b)(2). Id. at 245, 93 S. Ct. at 1584. It also held that a showing of actual prejudice—which the petitioner could not make—was necessary to lift the procedural bar, even though prejudice would have been presumed if the error had been raised in a timely fashion at trial and on direct appeal. Id. at 244–45, 93 S. Ct. at 1584. The Court explicitly acknowledged that "prejudice is presumed in cases where there is an allegation of racial discrimination in grand jury composition;" however, it still held that prejudice could not be presumed in order to relieve a petitioner of the procedural bar arising from his failure to timely raise the claim. Id. at 244, 93 S. Ct. at 1584.

21

The result and reasoning of these Supreme Court decisions reinforce the holding of our own Hollis decision that prejudice may not be presumed but must be shown in order to establish ineffective assistance of counsel based on the failure to raise a claim of structural error at trial. For the same reasons that prejudice cannot be presumed in order to satisfy the prejudice requirement when an objection to structural error was not made at trial, it cannot be presumed to satisfy the prejudice component of an ineffective assistance claim arising from the same failure to preserve the structural error. Otherwise, the Supreme Court's holdings in the Francis and Davis decisions would be pointless. Any defendant who could not make the prejudice showing necessary to have a defaulted claim of structural error considered could bypass that requirement by merely dressing that claim in ineffective assistance garb and asserting that prejudice must be presumed. We are not inclined to believe that the Supreme Court's decisions in Davis and Francis are pointless.

Finally, it is important to remember that virtually all ineffective assistance claims are litigated at the collateral attack stage, after the conviction and sentence have been upheld on direct review. "When the process of direct review . . . comes to an end, a presumption of finality and legality attaches to the conviction and sentence." Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S. Ct. 1710, 1719

22

(1993) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 887, 103 S. Ct. 3383, 3392 (1983)); <u>cf.</u> <u>Engle v. Isaac</u>, 456 U.S. 107, 134, 102 S. Ct. 1558, 1575 (1982) ("Federal habeas challenges to state convictions . . . entail greater finality problems and special comity concerns" than direct appeals); <u>Barefoot</u>, 463 U.S. at 887, 103 S. Ct. at 3392 (1983) ("Federal courts are not forums in which to relitigate state trials."). As the Supreme Court has emphasized, "[t]he principle that collateral review is different from direct review resounds throughout our habeas jurisprudence." <u>Brecht</u>, 507 U.S. at 633, 113 S. Ct. at 1719. To hold that the presumption of prejudice applies not only when properly preserved structural errors are raised on appeal but also when related ineffective assistance claims are raised in a collateral proceeding would diminish the difference between direct and collateral review. It would undermine the important finality and comity interests that are entitled to respect in a § 2254 proceeding, like this one. That we decline to do.

For all of these reasons, we hold that in order to prevail on his ineffective assistance claim stemming from the failure of his trial counsel to raise an objection to the closing of the courtroom, Purvis must show a reasonable probability of a different result in the trial if counsel had objected. Because he has not done that, his claim was properly denied.

AFFIRMED.

23