[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11407
Non-Argument Calendar
_____

D.C. Docket No. 8:16-cv-03194-CEH-JSS


JOSE A. TORRES, SR.,

                                                    Petitioner-Appellant,


versus


SECRETARY, DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

                                                    Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 3, 2021)

Before BRANCH, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Jose Torres, a Florida prisoner proceeding *pro se*, appeals the district court's denial of his 28 U.S.C. § 2254 federal habeas petition. The district court issued a certificate of appealability ("COA") on the issue of whether Torres's counsel was ineffective for failing to object to a jury instruction concerning whether the alleged victim was in the process of committing a burglary and a battery, which would have rendered Torres's use of deadly force was justified. Torres argues that his counsel's affirmative request for the erroneous instruction and failure to object to it once it was given was prejudicial because the instruction shifted the burden of proof regarding his use of force from the State to him and was confusing to the jury.[1] After careful review, we affirm.

## I.    Background

---

[1] Torres also argues that the challenged jury instruction violated his due process rights and that his conviction should be reversed on that basis. We will not address this issue as we denied previously Torres's request to expand the COA to include this claim. *Murray v. United States*, 145 F.3d 1249, 1250–51 (11th Cir. 1998) (explaining that appellate review is limited to the issues specified in the COA).

Additionally, we grant Torres's pending motion to amend his reply brief. We considered the amended reply brief in resolving this appeal.

In 2009, Torres was charged in Florida with aggravated battery with a deadly weapon in violation of Fla. Stat. § 784.045(1)(a)(2) for stabbing Ricky Walton with a sword. At trial, Torres maintained that he acted in self-defense.

Walton testified that he had known the Torres family for years, and, on August 15, 2008, he was driving in the Torres's neighborhood when he saw Torres's wife Marrie and a couple other people sitting outside Torres's house. Walton decided to stop and talk to them. According to Walton, Marrie asked him if he could stay there for a bit because Torres was on his way home, was drunk, and Marrie was afraid he was going to "hit her." Approximately five minutes later, Torres arrived home drunk and Marrie and Torres started arguing about whether Torres was seeing other women, and Marrie went inside the house and locked the door. Torres started beating on the doors and windows, but Marrie would not let him in. Walton went inside and convinced Marrie to let Torres in so that he could gather his belongings and leave. Torres came inside and he and Marrie started arguing in the bedroom, at which point Walton told them they needed to separate. Torres gathered some of his belongings and put them in his truck. He then came back inside and stated to Walton "I got you mother f'r" and returned to the bedroom. He emerged from the bedroom with some papers and what Walton thought was a cane, but it turned out to be a sword, and Torres stabbed Walton in the face. Walton testified that at no point had anyone asked him to leave the

3

house.  Walton ran from the house, and as he was running, he saw a police car and flagged it down.  Walton had a laceration on his jaw and underwent treatment for several days at a medical center.

Torres's daughter Rebecca, who was seventeen and at her parent's home at the time of the incident, testified that she and her family knew Walton.  She confirmed that, on the day in question, both of her parents had been drinking and they started arguing.  She denied seeing any altercation between Walton and Torres, but she admitted that she gave the police a written statement to the contrary.  In the written statement, she asserted that Torres was putting his belongings in his car and then he returned to the house to get his sword, and then said to Walton, "Here mother f'r," and stabbed him.  Rebecca testified that her statement was based on what Walton's friends had told her.

A law enforcement officer who responded to the scene testified that Rebecca was outside of the house when he arrived, and she told him that Torres had stabbed Walton.  He also testified that he found a sheath for a sword in the front yard.[2]

Marrie testified that, on the day in question, she had been drinking and was "drunk, drunk, drunk."  Specifically, after she arrived home from work, a couple of friends (not Walton) came by and told her that they saw Torres with another woman.  After her friends left, she went inside with hers and Torres's children.

---

[2] Torres left in his truck before the police arrived.  No sword was ever found.

4

She explained that she never saw Walton outside and did not invite Walton into her house—rather, she just walked out of a room and he was there inside the home. Marrie knew who Walton was, but she did not "know him personally," and denied that he was a family friend. She acknowledged that she and Torres started arguing when he got home, but she denied ever asking Walton for help, and stated that she observed Walton push Torres. Marrie testified that she was too drunk to write a statement when police arrived, and that someone, probably Rebecca, did it for her, but she signed it. Her statement indicated that she saw Torres stab Walton with a sword, but she maintained at the trial that was not what happened. She explained that she signed the statement because she was mad at Torres, and she regretted it.

Torance Calhoun, who was a friend of Torres's and had been living with the Torres family for several months at the time of the incident, testified that Walton entered the house when Torres was gathering his belongings to leave following a fight with Marrie. Calhoun did not believe that anyone had invited Walton into the house. Calhoun testified that he observed Walton and Torres argue, Walton then shoved Torres, and Torres punched Walton "hard" in the face. Calhoun did not see Torres with a sword or any other weapon. Calhoun explained that he did not stay to make a statement to the police because Calhoun thought there was a warrant out for his arrest. On cross-examination, it was revealed that Calhoun had multiple felony convictions.

5

Torres testified that when he got home Marrie was on the porch with two of their friends (not Walton), and she started yelling at Torres, accusing him of picking up other women. Torres stated he tried to ignore her because he was tired, and he went inside the house and into the bedroom. All of a sudden Walton opened the bedroom door. Torres explained that knew Walton from seeing him in the neighborhood, but he denied that Walton was a friend. Walton told Torres to "get out." Torres testified that he did not know why Walton was in his house or how he had gotten into the house and that he told Walton to leave. Torres explained that he exited the bedroom to look for his cigarettes and Walton was "running his mouth" and pushed Torres. Torres turned around and punched Walton. Torres explained that he was intimidated by Walton because Walton was bigger than him and younger. Torres stated he did not own a sword, and he denied ever seeing the sheath that was found in the yard. He maintained that he was wearing a large ring on the hand that he used to punch Walton.

After the relevant testimony, Torres's counsel requested that the jury instruction on burglary with battery be given to the jury. Counsel explained as follows:

> given that the justifiable use of deadly force includes the forcible
> entry to commit the felony. So the alleged felony in this case would
> be the alleged victim, Mr. Walton, having gone into the house
> uninvited and committing a burglary, so we just need to have the
> instructions for burglary with battery.

6

The State agreed to the instruction. In closing arguments, the State explained that it needed to prove two elements beyond a reasonable doubt: (1) that Torres committed a battery against Walton, meaning he "intentionally touched or struck" Walton against his will and/or intentionally caused Walton bodily harm; and (2) in committing the battery Torres used a deadly weapon. The State noted that the jury would also be instructed on self-defense, and that the justifiable use of deadly force is permissible only when a person "reasonably believes that such force is necessary to prevent, one, imminent death or great bodily harm to himself or another; or two, the imminent commission of a forcible felony against himself or another." The State explained that

> the only forcible felony that fits there that Mr. Torres could have even contemplated was going to be committed against himself or another is called burglary with a battery. Burglary is when you enter a structure with the intent to commit a crime therein, that's not even forcible, but it is a felony. What makes it forcible is that the crime you commit therein is then a battery.

Defense counsel, in relevant part, argued that the State had the burden of proving that

> even if Mr. Torres caused that injury [to Walton], he did not do it in self-defense. . . . They have to prove it didn't happen in self-defense. . . .
> When [Torres] struck [Walton] with his fist, was he acting in self-defense. And the answer to that is yes. Mr. Walton was in his house, uninvited. Mr. Walton was giving him a hard time. Mr. Walton had interfered and had insinuated himself, interfered with, gotten himself involved with a very intimate, very difficult family situation and exploited it, and then got into Mr. Torres' face and he

7

was not, again, in that house invited and Mr. Torres responded with a fist, causing some bleeding, and that's it.

Following closing arguments, the trial court instructed the jury that the State was required to prove the elements of aggravated battery beyond a reasonable doubt. It also instructed the jury that the justifiable use of deadly force was a defense to the charged offense and a person would be justified in using deadly force where he "reasonably believes that the force is necessary to prevent imminent death or great bodily harm to himself while resisting[:] (1) another's attempt to murder him, or; (2) any attempt to commit burglary with battery upon him or; (3) any attempt to commit burglary with battery upon or in any dwelling by him." Additionally, the court instructed the jury that deadly force would be justified if a person "reasonably believes" that it is necessary to prevent "imminent death or great bodily harm to himself or another." The court noted that "[t]he danger facing [Torres] need not have been actual . . . to justify the use of deadly force," but instead, "the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of that force." It further instructed the jury that:

> [i]f in your consideration of the issue of self-defense you have a reasonable doubt on the question of whether [Torres] was justified in the use of deadly force, you should find [him] not guilty. However, if from the evidence you are convinced that [Torres] was not justified in

8

the use of deadly force, you should find him guilty if all the elements of the charge have been proved.

13.1, burglary, Florida Statutes 810.02. To prove the crime of burglary the following three elements must be proven beyond a reasonable doubt:

(1) Ricky Walton entered a structure owned by or in the possession of [Torres].

(2) At the time of entering the structure Ricky Walton had the intent to commit an offense in that structure.

(3) Ricky Walton was not invited to enter the structure. . . .

If you find Ricky Walton committed a burglary, you must also determine if it has been proven beyond a reasonable doubt whether in the course of committing the burglary Ricky Walton battered any person. A battery is an actual and intentional touching or striking of another person against that person's will or the intentional causing of bodily harm to another person.

Next, the court instructed the jury that the justifiable use of non-deadly force was a defense to aggravated battery. Finally, the court instructed the jury that it was required to presume that Torres was innocent unless that presumption had been "overcome by the evidence to the exclusion of and beyond a reasonable doubt." And that Torres was "not required to present evidence or prove anything." Defense counsel did not raise any objection to the jury instructions.

After approximately an hour and twenty minutes of deliberation, the jury found Torres guilty as charged. Torres was sentenced to 15 years' imprisonment.

On direct appeal, Torres argued, in relevant part, that the trial court committed fundamental reversible error when it instructed the jury that he had to

9

prove beyond a reasonable doubt that Walton was committing both a burglary and a battery as this statement improperly shifted the burden of proof to Torres and indicated that unless this burden was met Torres's use of deadly force was not justified.  Alternatively, he argued that his trial counsel was ineffective on the face of the record for agreeing to the contested instruction.  Florida's Second District Court of Appeal ("DCA") summarily affirmed without written opinion.  Thereafter, the Second DCA denied Torres's petition for rehearing and request for a written opinion.

Torres subsequently filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850.[3]  He asserted, in relevant part, that his trial counsel was ineffective for agreeing to the jury instruction which provided that he had to prove beyond a reasonable doubt that Walton was committing both a burglary and a battery.  Citing numerous state court cases, Torres maintained that the instruction prejudiced his trial because it shifted the burden of proof to him and negated his claim of self-defense or defense of his dwelling.

In response, the State noted that Torres had challenged the jury instruction on direct appeal as fundamental reversible error, and the Second DCA had rejected

---

[3] Torres filed numerous state postconviction filings between the conclusion of his direct appeal in May 2011 and the filing of his federal habeas petition in 2016.  This opinion discusses only the state postconviction filings relevant to the issue upon which the district court granted a COA.

this argument, which demonstrated that Torres did not suffer any prejudice from the erroneous instruction.  The State also noted that the burden of proof was properly explained during closing arguments.  And regardless, the justifiable use of deadly force instruction was not implicated by Torres's theory of the case, which was that he did not cause Walton's injury, he did not use a sword to stab Walton, and he punched Walton in self-defense.

The trial court denied Torres's Rule 3.850 motion, explaining that the justifiable use of deadly force instruction, which was independent of the burglary and battery instruction, "ma[de] it clear that the justifiable use of deadly force [was] based upon [Torres's] reasonable belief."  The trial court also affirmatively agreed with the State's proffered reasons that Torres could not establish he was prejudiced by the instruction.  Torres appealed, and the Second DCA affirmed without written opinion.  The Second DCA subsequently denied Torres's motion for rehearing and request  for a written opinion.

Thereafter, Torres filed the underlying *pro se* § 2254 habeas petition.  He argued, in relevant part, that his trial counsel was ineffective for agreeing to, and otherwise failing to object to, the jury instructions concerning burglary and battery, which shifted the burden of proof to Torres.  Specifically, Torres maintained that the instructions provided that he had to prove beyond a reasonable doubt that Walton was committing a burglary and a battery, which implied that unless Torres

11

proved this fact, his use of deadly force in self-defense or in defense of his home was not justified. The State responded that the state court's denial of this claim was not contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984), because as the state court concluded, Torres failed to demonstrate prejudice—*i.e.*, a reasonable probability that the outcome of the trial would have been different had counsel objected to the instruction.

In reply, Torres reiterated that his counsel had improperly requested the instruction on burglary with battery and asserted that under Florida law he was not required to prove that Walton committed either offense before he would be justified in using deadly force. He maintained that his counsel's performance was prejudicial because it negated his defense, precluded a fundamentally fair trial, and confused or mislead the jury.

The district court denied Torres's ineffective-assistance claim, concluding that the state court's determination that Torres failed to establish prejudice was not objectively unreasonable. The district court determined that the record, when considered in its entirety, demonstrated that the State retained the burden of proof throughout the trial. It reasoned that, although the jury was instructed that it was required to find that Walton committed burglary with battery beyond a reasonable doubt, it was never instructed that Torres had the burden to prove anything or that it could find that Torres acted in self-defense only if it was proven beyond a

12

reasonable doubt that Walton was committing a burglary or a battery against him at the time Torres used deadly force. Further, the district court concluded that due to the substantial evidence against Torres at trial, he could not show that there was a reasonable probability of a different outcome at trial absent the alleged error. Nevertheless, the district court granted Torres a COA on this ineffective-assistance-of-counsel claim. This appeal followed. Torres moved to expand the COA in this Court to include an argument that the jury instruction violated his due process rights, but his motion was denied. Thus, the only issue before us is the ineffective-assistance-of-counsel claim.

## II.    Discussion

Torres argues on appeal that the state court erred in denying his ineffective-assistance claim because he suffered prejudice as a result of the battery and burglary instruction. He argues that the instruction improperly shifted the burden of proof to him and undermined confidence in the outcome of the trial, given that the instruction was confusing and negated his defense.[4] He maintains

---

[4] In his *pro se* brief, Torres also asserts that he was prejudiced because burden-shifting is a violation of his due process rights. However, whether or not any impermissible burden shifting may have violated his due process rights is not relevant to the *Strickland* prejudice inquiry, which, as discussed further in this opinion examines whether there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thus, it is not enough for Torres to allege or even show a due process violation. Rather, to succeed on his ineffective-assistance-of-counsel claim, he must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

that the state court's decision denying this ineffective-assistance claim was contrary to, and an unreasonable application of, federal law as set forth in *Strickland*, *Sullivan v. Louisiana*, 508 U.S. 275 (1993), *In re Winship*, 397 U.S. 358 (1970), and *Francis v. Franklin*, 471 U.S. 307 (1985).[5]

We review the district court's denial of a § 2254 habeas petition *de novo*. *Morrow v. Warden, Ga. Diagnostic Prison*, 886 F.3d 1138, 1146 (11th Cir. 2018). Yet the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) also governs this appeal, which establishes a "highly deferential standard for evaluating state-court rulings, [and] demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v.*

---

[5] Additionally, Torres cites a number of Florida cases which he alleges demonstrate that jury instructions, like those given in his case, constitute fundamental, reversible error under Florida law. Those cases clearly relate to Torres's substantive claim that the instructions in question violated his due process rights, which is not the issue before us. To the extent Torres relies on those cases to establish that he suffered prejudice from his counsel's failure to object to the instructions, his reliance is misplaced because at best those cases establish that perhaps the Second DCA got it wrong when it denied his fundamental error claim on direct appeal. The cases do not establish that, but for his counsel's error, there is a reasonable probability that the outcome of his trial would have been different. *See Purvis v. Crosby*, 451 F.3d 734, 739 (11th Cir. 2006) ("The Supreme Court in *Strickland* told us that when the claimed error of counsel occurred at the guilt stage of a trial (instead of on appeal) we are to gauge prejudice against the outcome of the trial: whether there is a reasonable probability of a different result at trial, not on appeal."). To the extent Torres relies on the cited Florida cases to demonstrate that the denial of his ineffective-assistance claim conflicted with state law, his reliance is also misplaced. As discussed further in this opinion, in order to be granted federal habeas relief, Torres must show that the state court's decision denying his claim on the merits (1) "was contrary to, or involved an unreasonable application of, clearly established *[f]ederal law*, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." 28 U.S.C. § 2254(d)(1), (2) (emphasis added).

*Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  Thus, under AEDPA, our review of a final state habeas decision is greatly circumscribed, and where a state court has adjudicated a claim on the merits,[6] a federal court may grant habeas relief only if the decision of the state court:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

"[C]learly established law" under § 2254(d) refers to the holdings of the Supreme Court at the time of the relevant state court decision.  *Yarborough v. Alvarado*, 541 U.S. 652, 660–61 (2004).  "A state court acts contrary to clearly established federal law if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court of the United States and nevertheless arrives at a result different from its precedent."  *Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1286 (11th Cir. 2012) (quotation omitted).  A state

---

[6] Because the Second DCA affirmed the trial court's decision denying Torres's ineffective-assistance claim without explaining its reasoning, we "look through" to the last reasoned decision and assume that the Second DCA adopted that reasoning. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (holding that when the final state court to adjudicate the merits of a petitioner's claim simply affirms or denies a lower court's decision without explaining its reasoning, the federal habeas court should "look through" to the last reasoned state court decision and assume that the unexplained decision adopted that reasoning).

15

court's decision is based on an unreasonable application of clearly established federal law if it "identifies the correct governing legal rule but unreasonably applies it to the facts of the particular state prisoner's case, or when it unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Id.* (quotation omitted).  To be clear, the state court's application of federal law "must be 'objectively unreasonable.'  This distinction creates 'a substantially higher threshold' for obtaining relief than *de novo* review." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotation omitted); *White v. Woodall*, 572 U.S. 415, 419 (2014) (explaining that, for purposes of § 2254(d)(1), the State's court's application of clearly established federal law must be "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice" (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003))).  "A state court's application of federal law is not unreasonable so long as fairminded jurists could disagree on the correctness of the state court's decision." *Kilgore v. Sec'y, Fla. Dep't of Corr.*, 805 F.3d 1301, 1312 (11th Cir. 2015) (quotation omitted).

To make a successful claim of ineffective assistance of counsel, a defendant must show both that (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687.  Thus, where the ineffective-assistance claim is based on trial counsel's failure to object to a jury instruction, the defendant must show that "the instruction was improper,

16

that a reasonably competent attorney would have objected to the instruction, and the failure to object was prejudicial." *Daughtery v. Dugger*, 839 F.2d 1426, 1428 (11th Cir. 1988). Prejudice occurs when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Failure to establish either the deficient performance prong or the prejudice prong is fatal and makes it unnecessary to consider the other. *Id.* at 697. Further, "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quotations omitted).

Here, the state court concluded that Torres could not establish prejudice, and Torres has failed to establish that the state court's denial of his claim was contrary to, or an unreasonable application of, *Strickland*. As the state court determined, despite the "beyond a reasonable doubt" burglary and battery instruction, the record confirms that the jury was properly instructed that: (1) the State bore the ultimate burden of proof; (2) the justifiable use of deadly force was based on whether Torres reasonably believed that force was necessary to prevent imminent death or great bodily harm while resisting an attempt to commit burglary with battery upon him; (3) Torres was entitled to a presumption of innocence, and (4) Torres did not have to prove anything or present any evidence. Additionally, during closing arguments, defense counsel explained to the jury that the State bore

17

the burden of disproving Torres's self-defense theory.  Further, contrary to

Torres's assertion, there is no indication that the jury was confused by the

instruction.  The jury deliberated for approximately an hour and twenty minutes

before returning the verdict of guilt, and it asked no questions during that time.

Moreover, as the district court noted, the evidence against Torres was substantial,

and, therefore, he cannot show that there is a reasonable probability that, but for

the beyond a reasonable doubt battery and burglary instruction, the outcome of the

proceeding would have been different.  Thus, when the jury instructions and the

record are considered in the entirety, the state court's determination that, despite

the erroneous instruction, the State retained the burden of proof and Torres failed

to establish prejudice is not an objectively unreasonable application of *Strickland*

or its progeny.  *See Kilgore*, 805 F.3d at 1312 ("A state court's application of

federal law is not unreasonable so long as fairminded jurists could disagree on the

correctness of the state court's decision." (quotation omitted)).

Similarly, Torres's reliance on the Supreme Court's decisions in *In re*

*Winship*, *Sullivan*, and *Francis* is misplaced.  Each of those cases is factually and

legally distinguishable.  Specifically, in *Winship*, the Supreme Court held that, in

the scheme of criminal procedure, the beyond a reasonable doubt standard was an

essential component of constitutional due process as it "protects the accused

against conviction except upon proof beyond a reasonable doubt of every fact

18

necessary to constitute the crime with which he is charged." 397 U.S. at 364.

Therefore, the Supreme Court held that the beyond a reasonable doubt standard

also applied to juvenile delinquency proceedings in which juveniles were charged

with criminal violations. *Id.* at 368. In *Sullivan*, a Louisiana trial court gave a jury

instruction in a murder trial that included an unconstitutional definition of

"reasonable doubt." 508 U.S. at 276–77. The defendant was convicted, and the

Louisiana Supreme Court affirmed the conviction on appeal, concluding the

instruction was harmless error. *Id.* at 277. The Supreme Court reversed, holding

that the erroneous instruction was a structural error that deprived the defendant of

his Sixth Amendment right to a jury trial because it prevented the jury from

producing a constitutional verdict of guilt beyond a reasonable doubt. *Id.* at 277–

82. Lastly, in *Francis*, the Supreme Court held that where there are contradictory

jury instructions as to intent and one of those instructions creates an

unconstitutional understanding as to the allocation of the burden of persuasion, the

verdict must be set aside "unless other language in the charge *explains* the infirm

language sufficiently to eliminate" the possibility that the jury "understood the

instruction in an unconstitutional manner." 471 U.S. at 323 n.8 (emphasis in

original). At best, these cases relate to Torres's due process argument, but that

argument is not before us. Rather, the only issue before this Court is whether

Torres's counsel was ineffective for failing to object to the battery and burglary

19

jury instruction.  In order to prevail on that issue, Torres has to demonstrate that there is a reasonable probability that, but for the erroneous instruction, the outcome of the trial would have been different.  As explained previously, the state court concluded that, based on the record as a whole, he failed to establish prejudice, and Torres has not shown that the state court's decision was contrary to, or an unreasonable application of, federal law.  Accordingly, the district court did not err in denying Torres's claim, and we affirm.

**AFFIRMED.**