## 44820. MINCEY v. THE STATE.
(360 SE2d 578)

MARSHALL, Chief Justice.

Larry Mincey appeals from his conviction of the felony murder of Angela Hyatt, for which he was sentenced to life imprisonment.[1] We

---

[1] The crime was committed on September 22, 1984. The defendant was convicted and sentenced on October 24, 1986. A motion for new trial was filed on November 4, 1986. The transcript was filed on November 24, 1986. The motion for new trial was amended on January 30, 1987, and denied on May 22, 1987. His notice of appeal was filed on June 15, 1987,

affirm.

Mincey was identified by witnesses as the person who was present in the Shop & Go store in Garden City immediately before the clerk-victim was robbed and shot, and who was seen running from the store as the victim was observed lying on the floor behind the counter. No money was found in the cash register thereafter. A professional tracker followed footprints from the store to a fence at Mincey's residence. Police executed a search warrant on Mincey's residence, and recovered, among other things, money bands marked "Trust Company Bank." The store's supervisor testified that the store banked at Trust Company Bank, and that it was customary for money at the store to be banded with the bank's wrappers. Mincey admitted to his cellmate, Samuel Jackson, that he had committed the robbery and the murder. The jury heard evidence about two robberies previously committed by Mincey at the same Shop & Go store and at another convenience store.

1. The appellant contends that he was denied his guaranteed confrontation rights because he was not allowed to cross-examine his former cellmate as to his previous convictions without introducing the records of his convictions in evidence, thereby waiving his right to closing argument.

The trial court allowed him to cross-examine the witness as to any deal which may have been struck between him and the state relative to his convictions and sentences as a result of his testimony in Mincey's case. However, the court properly refused to allow him to elicit testimony, for impeachment purposes, concerning the fact that the witness had been convicted of four armed robberies unless this was accomplished by the introduction of certified copies of the records of those convictions. See *Kimbrough v. State*, 254 Ga. 504 (2) (330 SE2d 875) (1985) and cits. This the appellant chose not to do. The cases cited by the appellant are distinguishable in that they involved situations in which the prior convictions could not be introduced, either because the trial court prohibited the party from addressing such convictions or because no certified copies of such convictions existed to be produced. See *Delaware v. Van Arsdall*, 475 U. S. ___ (106 SC ___, 89 LE2d 674) (1986); *Davis v. Alaska*, 415 U.S 308 (94 SC 1105, 39 LE2d 347) (1974); *Hines v. State*, 249 Ga. 257 (2) (290 SE2d 911) (1982).

2. Nor did the state "open the door" to such cross-examination by propounding a question to its witness, Samuel Jackson, concerning the fact that the witness was presently incarcerated at the state

---

and the record was docketed in this Court on July 8, 1987. The appeal was submitted for decision without oral arguments on August 21, 1987.

prison at Reidsville, and establishing that the witness expected to remain there for three or four years. The appellant was free thereafter to follow the proper rules of evidence and impeach the witness by introducing certified copies of the prior convictions, as stated hereinabove. The cases cited by the appellant deal with the defendant's placing his character in issue in order to "open the door" for the state to introduce such evidence, and hence are inapplicable here. See *Parker v. State*, 256 Ga. 543 (350 SE2d 570) (1986); *Mason v. State*, 180 Ga. App. 235 (3) (348 SE2d 754) (1986); *Phillips v. State*, 171 Ga. App. 827 (2) (321 SE2d 393) (1984).

3. The appellant next contends that his federal constitutional right to a speedy trial was violated. In support of this contention, he argues that he was incarcerated for 26 months between indictment and trial; that he never moved for a continuance or otherwise caused the delay; that the state obtained a continuance because police officers who were witnesses were out of town for seminars; that he was prejudiced because the police destroyed evidence in the case (including the bank money wrappers and the fingerprints lifted at the scene) being held in the police property room; and that he was held for 26 months without bond, citing the dissent of Justice Weltner in *Perry v. Mitchell*, 253 Ga. 593, 596 (322 SE2d 273) (1984).

However, a period of only eight days elapsed between the appellant's assertion of his right to a speedy trial and the trial. Although a period of 21 months elapsed between indictment *in this case* and trial, he was *convicted* on other indictments during this period, and was being held under those convictions pending his appeals. See *Mincey v. State*, 180 Ga. App. 263 (349 SE2d 1) (1986); *State v. Mincey*, 256 Ga. 636 (353 SE2d 814) (1987). Hence, the period of holding *in this case* was not violative of his right to a speedy trial. Nor was actual prejudice shown by the unintentional destruction of the evidence; the state, which had the burden of proof, was thereby prevented from producing this actual physical evidence; the appellant, though unable to examine the property, had a full opportunity to cross-examine Detective White as to the description of the property. Accordingly, the trial court did not err in denying the motion to dismiss the indictment by reason of the alleged pretrial delay.

4. Mincey, a black, next contends that the manner in which the prosecutor exercised his peremptory challenges against blacks gave rise to an inference of discrimination — a prima facie case of purposeful discrimination — that was not successfully rebutted by the prosecutor.

"The proscription laid down in *Batson* [*v. Kentucky*, 476 U. S. ___ (106 SC 1712, 90 LE2d 69) (1986)] is that a prosecutor may not strike a black juror *solely* because of his race, nor may he strike on the basis of an assumption which arises 'solely from the jurors' race,'

nor may he strike 'to exclude . . . veniremen from the petit jury on account of their race.' Id. at 1723." (Emphasis supplied.) *Gamble v. State*, 257 Ga. 325 (2) (357 SE2d 792) (1987).

"[A] defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group, *Castaneda v. Partida*, 430 U. S. 482, 494 [(97 SC 1272, 1280, 51 LE2d 498) (1977)] and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' *Avery v. Georgia*, 345 U. S. [559, 562 (73 SC 891, 892, 97 LE 1244) (1953)]. Finally, *the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race*. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

"In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising *voir dire*, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors." (Emphasis supplied.) *Batson*, 106 SC, supra at 1722, 1723.

"All relevant circumstances" in the case, which *Batson* holds must be considered, include the facts that the prosecutor used seven of his 10 strikes to remove blacks from the venire; that the state accepted five black jurors prior to exhausting its strikes; that the state utilized five strikes on blacks, three on whites, and the race of two panel members was not noted on the record; and that there were at least three blacks on the jury.[2]

In *Powell v. State*, 182 Ga. App. 123, 124 (2), (355 SE2d 72)

---

[2] The transcript reveals that the trial judge stated that there were three, and the assistant district attorney stated at one place that there were four and at another place that there were five.

(1987), cert. denied, the Court of Appeals held that the fact that three blacks were on the jury of 12, was not determinative, and that "[t]he question is whether the state exercised *any* of its strikes for a racially discriminatory reason, for if it did, the rule of *Batson* was violated." That court held that a number of specified circumstances were sufficient to establish a prima facie case of purposeful discrimination in selection of the petit jury, and the case was remanded to the trial court, as the factfinder, for an evidentiary hearing consistent with *Batson*.

We do not read *Powell* to mean that the factfinder cannot *consider* the fact of the number of blacks on the jury, along with all other "relevant circumstances." Rather, we understand it to mean, when read along with that portion of *Batson* quoted hereinabove, that that fact alone does not automatically outweigh other relevant circumstances which would raise an inference of unlawful discrimination.

Our interpretation is bolstered by the recent holding in *United States v. Dennis*, 804 F2d 1208, 1211 (11th Cir. 1986), cert. denied, involving similar factual circumstances, that "[i]t is . . . obvious that the government did not attempt to exclude all blacks, or as many blacks as it could, from the jury. Moreover, the unchallenged presence of two blacks on the jury undercuts any inference of impermissible discrimination that might be argued to arise from the fact that the prosecutor used three of the four peremptory challenges he exercised to strike blacks . . . . We thus conclude that all of the relevant facts and circumstances do not raise an inference of purposeful discrimination on the basis of race, and that appellants were not entitled to any inquiry into the prosecutor's reasons for exercising his peremptory challenges as he did."

We thus likewise conclude that the trial court did not err in holding that no prima facie case for unlawful discrimination was made here. Moreover, even if such a prima facie case had been made, a review of the explanations offered by the prosecutor reveals that a race-neutral explanation was given as to all of the potential jurors.

5. Absent a timely request, the trial court did not err in failing to charge that an uncorroborated confession is insufficient to support a conviction. *Roberts v. State*, 167 Ga. App. 38 (4) (306 SE2d 43) (1983); *Hunt v. State*, 166 Ga. App. 524 (2) (304 SE2d 576) (1983). The failure to so charge was held to be error in *Lucas v. State*, 110 Ga. 756 (4) (36 SE 87) (1900), only because the trial court had omitted this essential and vital part of the law of confessions from an otherwise full and accurate charge on the law of confessions. *Johnson v. State*, 253 Ga. 37 (315 SE2d 871) (1984) — requiring a full charge on a defendant's sole defense absent a written request — is likewise inapplicable here.

6. Detective White testified that he and other officers had con-

ducted a search. He was thereafter permitted to utilize his inventory of the search in testifying as to what was seized. The appellant objected on the ground that the witness could testify from memory alone, and that, unless he could refresh his memory, he could not read the inventory into evidence. There was no objection as to the witness' swearing from the document.

OCGA § 24-9-69 provides: "A witness may refresh and assist his memory by the use of any written instrument or memorandum, provided he shall finally speak from his recollection thus refreshed *or shall be willing to swear positively from the paper.*" (Emphasis supplied.) "In order to swear positively from the paper, it is essential that the witness should at some time have had personal knowledge of the correctness of the memorandum. [Cits.]" *Sizer & Co. v. Melton & Sons*, 129 Ga. 143, 151 (5) (58 SE 1055) (1907). It is not necessary that the witness have present recollection of the contents of the document. See *Black v. Thornton*, 30 Ga. 361 (1) (1860).

Under the circumstances here, there was no error in permitting the witness to read the inventory list into evidence.

7. "[I]n certain circumstances, evidence of independent crimes is admissible. Two conditions must be satisfied. 'First, there must be evidence that the defendant was in fact the perpetrator of the independent crime. Second, there must be *sufficient similarity* or *connection* between .the independent crime and the offense charged, that proof of the former tends to prove the latter.' *French v. State*, 237 Ga. 620, 621 (229 SE2d 410) (1976)." *Walraven v. State*, 250 Ga. 401, 408 (4b) (297 SE2d 278) (1982).

The trial court did not err in admitting evidence of two independent crimes here where the appellant was positively identified as the perpetrator thereof and where the three crimes had the following similarities/connection: All three robberies occurred in the same geographic area (two of them at the same store) in the vicinity of the appellant's residence, to which vicinity the appellant fled on foot after each episode; in all three robberies, the appellant, acting alone, entered the stores (all involving the same type of business) at night, began to pretend to look at magazines before he approached the clerk, and fled the scene on foot and immediately went around the edge of the building; and the three robberies occurred in a reasonably close time frame, i.e., January, August and September of 1984. The state's case being based largely upon circumstantial evidence, the evidence of similar crimes was necessary for the purpose of showing identity and course of conduct.

8. The trial court did not err in admitting in evidence a pre-autopsy photograph of the victim showing the nature and location of the fatal wounds to her face. "A photograph which shows mutilation of a victim resulting from the crime against him may, however gruesome,

have relevance to the trial of his alleged assailant." *Brown v. State*, 250 Ga. 862, 867 (5) (302 SE2d 347) (1983).

9. The appellant contends that the trial court erred in charging the jury that "[w]hen witnesses appear and testify, they are presumed to speak the truth and are to be believed the jury [sic] unless they are impeached in some manner provided by law." Although we have held that such presumption-of-truthfulness charges can be misleading, and are of little positive value, and have recommended that their use be discontinued, we have nevertheless noted that they have been held not to be, as the appellant contends, unconstitutionally burden-shifting. *Noggle v. State*, 256 Ga. 383 (4) (349 SE2d 175) (1986).

10. The appellant contends that he was entitled to a *Jackson-Denno* (*Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964)) hearing prior to the admission in evidence of testimony by police officer McFarlane that the appellant had, during a routine booking procedure on a prior arrest for a different crime, given his street address. However, the trial court properly ruled that this questioning was not reasonably likely to elicit an incriminating response so as to constitute police interrogation as contemplated by *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). See *Rhode Island v. Innis*, 446 U. S. 291, 302 (100 SC 1682, 64 LE2d 297) (1980); *Perry v. State*, 255 Ga. 490, 492 (2) (339 SE2d 922) (1986); *Craver v. State*, 246 Ga. 467 (1) (271 SE2d 862) (1980); *Shy v. State*, 234 Ga. 816 (1) (218 SE2d 599) (1975); *Loftin v. State*, 180 Ga. App. 613 (5) (349 SE2d 777) (1986), cert. den.; *Lester v. State*, 174 Ga. App. 886 (2) (331 SE2d 31) (1985); *White v. State*, 168 Ga. App. 794, 796 (310 SE2d 540) (1983); *Chester v. State*, 157 Ga. App. 191 (276 SE2d 684) (1981); *Jenkins v. State*, 123 Ga. App. 822 (182 SE2d 542) (1971). Moreover, the appellant thoroughly questioned the witness outside the jury's presence as to all the circumstances surrounding the giving of the statement. We find no error.

11. We have reviewed the record in a light most favorable to the jury's verdict, and find that the evidence was sufficient to authorize a rational trier of fact to find Mincey guilty of felony murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

12. The appellant argues that the trial court erred in charging the law of flight. Although there exists sentiment for abolishing such a jury instruction as unnecessary (see the concurring opinion in *Cameron v. State*, 256 Ga. 225, 227 (345 SE2d 575) (1986)), we still uphold such charges when they are warranted. E.g., *Booker v. State*, 257 Ga. 37 (5) (354 SE2d 425) (1987). The charge was warranted here, where there was evidence that a man fitting the appellant's description was seen running from the store immediately after a noise was heard which well could have been a gunshot, and that the tracks were fol-

lowed, leading to the residence which the defendant gave as his address at the time of his booking. Moreover, since the appellant's defense revolved around his identity as the murderer, and in light of the appellant's admissions to Samuel Jackson, it is highly improbable that the charge on flight contributed to the verdict of the jury. See *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976).

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 1, 1987 —
RECONSIDERATION DENIED OCTOBER 21, 1987.

*Jackson & Schiavone, Michael G. Schiavone,* for appellant.

*Spencer Lawton, Jr., District Attorney, Jeffrey S. Hendrix, J. Clayton Culp, Assistant District Attorneys, Michael J. Bowers, Attorney General, Mary Beth Westmoreland, Assistant Attorney General,* for appellee.