## S00A0877. BLACKMON v. THE STATE.
### (536 SE2d 148)

CARLEY, Justice.

A jury found Michael Blackmon guilty of malice murder, armed robbery and aggravated assault, for which crimes the trial court imposed two consecutive life sentences and a consecutive 20-year term of imprisonment. Blackmon's motion for new trial was denied, and he appeals from the judgments of conviction and sentences entered by the trial court on the jury's guilty verdicts.[1]

1. The evidence shows the following: Blackmon and Charlie Stubbins were drinking together in a local nightclub. As William Asante and Labage Bojang were leaving the same club, Blackmon and Stubbins asked for a ride. Bojang agreed, and the four left in his car with Blackmon and Stubbins occupying the backseat. Following directions, Bojang drove down a dirt road into a wooded area. Asante became suspicious, and he instructed Bojang to stop the car. Blackmon and Stubbins exited, as did Bojang. Either Blackmon or Stubbins demanded money from Bojang. When Bojang stated that he had none, Asante heard shots and he fled the car. As he ran, Asante was shot several times. Despite his wounds, Asante reached a nearby residence, and the authorities were alerted. When the police arrived at the scene, they discovered the body of Bojang in a ditch. He suffered multiple gunshots to his chest and abdomen. Blackmon and Stubbins drove away in Bojang's car, and eventually they went to the home of Blackmon's cousin who lived nearby. When officers went to the cousin's residence, they discovered a gun under the sofa where Stubbins had been sleeping. Ballistics testing showed that this was the murder weapon. Police officers discovered Bojang's abandoned car, the interior having been set on fire. Impressions of shoe prints found near the car matched Blackmon's shoes. Blackmon led police to a location where stereo speakers removed from Bojang's car were hidden. Blackmon and Stubbins were indicted jointly, but tried separately. Blackmon presented no evidence, and urges on appeal that

---

[1] The crimes occurred on November 4, 1995. The grand jury indicted Blackmon on November 6, 1995. The jury returned its guilty verdicts on January 28, 1998. On February 12, 1998, Blackmon filed his motion for new trial and, on November 10, 1999, the trial court denied that motion. Blackmon filed his notice of appeal on November 16, 1999. The case was docketed in this Court on February 14, 2000 and was submitted for decision on April 10, 2000.

the State proved only that he was present when Stubbins actually committed the crimes.

Although mere presence at the scene is insufficient to authorize a conviction for committing an offense, criminal intent may be inferred from the accused's conduct before, during and afterwards. *Johnson v. State*, 269 Ga. 632, 634 (501 SE2d 815) (1998). Here, the prosecution presented evidence which, if believed by the jury, showed that Blackmon actively conspired with Stubbins in a plan which encompassed stealing the automobile after shooting both Bojang and Asante. *Sands v. State*, 262 Ga. 367, 368 (2) (418 SE2d 55) (1992). Thus, the evidence was sufficient to authorize a rational trier of fact to find proof beyond a reasonable doubt of Blackmon's guilt as a party to the murder of Bojang, the taking of Bojang's car at gunpoint, and the aggravated assault against Asante. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. On redirect examination of Asante, the trial court, over an objection by the defense, allowed the State to introduce a pre-trial statement which was consistent with Asante's testimony on direct. *Cuzzort v. State*, 254 Ga. 745 (334 SE2d 661) (1985). Blackmon urges that this was error, because he did not attack Asante's truthfulness on cross. *Woodard v. State*, 269 Ga. 317, 320 (2) (496 SE2d 896) (1998) provides that,

> [u]nless a witness's veracity has affirmatively been placed in issue, the witness's prior consistent statement is pure hearsay evidence, which cannot be admitted merely to corroborate the witness, or to bolster the witness's credibility in the eyes of the jury.

A review of the transcript shows, however, that the import of the cross-examination of Asante was that portions of his testimony on direct were inconsistent with what he had told defense counsel in an earlier interview. Thus, the suggestion was that, as to these particulars, Asante's inculpatory trial testimony lacked veracity and had been fabricated since his interview with Blackmon's attorney. Since Asante's credibility was placed into issue, the trial court did not err in admitting his prior statement in accordance with *Cuzzort*. Compare *Woodard v. State*, supra at 320 (2), fn. 2. Moreover, even assuming that admission of the statement was error, we would reverse only "if it appears likely that the hearsay contributed to the guilty verdict." *Woodard v. State*, supra at 324 (4). Considering the overwhelming admissible evidence of Blackmon's guilt, the admission of Asante's statement, even if error, was harmless. See *Bridges v. State*, 268 Ga. 700, 708 (6) (492 SE2d 877) (1997).

3. After giving a comprehensive charge on credibility, the trial

court instructed the jury that,

> upon consideration of [the] evidence in the case, if you find that there is a conflict in the testimony of the witnesses or a conflict between one or more witnesses, it would be your duty to reconcile this conflict if you can without attributing a false statement to any witness sworn. *All witnesses who take the stand and take the oath presume to speak the truth.* However, if the evidence is too different or irreconcilable that you cannot do this, then you should believe that witness or those witnesses whom you think are entitled to the most credit and belief.

(Emphasis supplied.) Citing the reference to the presumption of a witness's truthfulness, Blackmon enumerates the giving of this charge as error.

In *Noggle v. State*, 256 Ga. 383, 386 (4) (349 SE2d 175) (1986), we recommended that trial courts discontinue giving the presumption-of-truthfulness charge, as it "can be misleading and is of little positive value. . . ." However, we also have repeatedly "held that the use of such a charge is not unconstitutional and does not constitute reversible error. [Cits.]" *Whatley v. State*, 270 Ga. 296, 300 (10) (b) (509 SE2d 45) (1998). When read in context, the charge here was not misleading, since reference was made to the presumption of truthfulness simply as the underlying legal rationale for the jury's *initial* duty to reconcile a conflict in the evidence without automatically assuming that any witness had committed perjury. The jurors were fully charged on their *ultimate* responsibility to determine which witness to believe. Thus, "the charge involved here contains no suggestion that an unimpeached witness must be believed, but merely urges the jury to attempt to reconcile conflicting testimony before considering the credibilty of witnesses." *Mallory v. State*, 271 Ga. 150, 151 (2) (517 SE2d 780) (1999).

*Judgments affirmed. All the Justices concur.*

DECIDED OCTOBER 10, 2000.

*L. Clark Landrum*, for appellant.

*C. Paul Bowden, District Attorney, Thurbert E. Baker, Attorney General, Wylencia H. Monroe, Assistant Attorney General*, for appellee.