S09A1684. REID v. THE STATE.
(690 SE2d 177)

CARLEY, Presiding Justice.
A jury found Travion Reid guilty of malice murder, two counts of felony murder, aggravated assault, criminal attempt to commit armed robbery and possession of a firearm during the commission of a felony. The trial court entered judgments of conviction and sentenced Reid to life imprisonment for malice murder and to five years imprisonment for the weapons charge, consecutive to the life sentence. The felony murder verdicts were vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 372 (4) (434 SE2d 479) (1993). The trial court merged the aggravated assault and attempted

armed robbery verdicts into the malice murder conviction. Reid appeals after the denial of a motion for new trial.[*]

1. Construed most strongly in support of the verdicts, the evidence shows that Reid killed Cheyenne Morgan by intentionally shooting him with a rifle during an attempted armed robbery. The evidence was sufficient for a rational trier of fact to find Reid guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Reid contends that the trial court erred in charging the jury that "[w]hen witnesses appear and testify, they are presumed to speak the truth unless impeached in some manner provided by law."

> In *Noggle v. State*, 256 Ga. 383, 386 (4) (349 SE2d 175) (1986), we recommended that trial courts discontinue giving [such a] presumption-of-truthfulness charge, as it "can be misleading and is of little positive value. . . ." However, we also have repeatedly "held that the use of such a charge is not unconstitutional and does not constitute reversible error. (Cits.)" [Cit.]

*Blackmon v. State*, 272 Ga. 858, 860 (3) (536 SE2d 148) (2000).

Moreover, "jury instructions must be read and considered as a whole. [Cit.]" *Whitaker v. State*, 283 Ga. 521, 525 (4) (661 SE2d 557) (2008). Here, the trial court fully charged the jury on determining the credibility of witnesses, resolving conflicts in the evidence and the ways in which witnesses may be impeached. "When read in context, the [presumption of truthfulness] charge here was not misleading. . . ." *Blackmon v. State*, supra. Although it certainly would have been the better practice not to give such a charge, the trial court did not commit reversible error in giving it. See *Best v. State*, 261 Ga. 30, 31 (5) (401 SE2d 732) (1991); *Davis v. State*, 261 Ga. 18, 19 (8) (401 SE2d 724) (1991); *Baxter v. Kemp*, 260 Ga. 184, 186 (5) (391 SE2d 754) (1990); *Mincey v. State*, 257 Ga. 500, 506 (9) (360 SE2d 578) (1987).

3. Reid claims that his trial counsel was ineffective. In order to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), Reid " 'must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial

---

[*] The crimes occurred on December 30, 2003, and the grand jury returned the indictment on April 16, 2004. The jury found Reid guilty on October 20, 2006, and the trial court entered judgment on October 26, 2006. Reid filed a motion for new trial on November 2, 2006. An amended motion for new trial was filed on April 3, 2008, and was denied on January 20, 2009. The notice of appeal was filed on January 29, 2009. The case was docketed in this Court on June 25, 2009, and oral argument was held on October 5, 2009.

result would have been different if not for the deficient performance. (Cit.)' [Cit.]" *Hill v. State*, 284 Ga. 521, 522 (2) (668 SE2d 673) (2008). " 'On appeal, this Court accepts the trial court's findings of fact, unless they are clearly erroneous. However, the trial court's legal conclusions are reviewed de novo. (Cit.)' [Cit.]" *King v. State*, 282 Ga. 505, 506 (2) (651 SE2d 711) (2007).

(a) Reid first alleges that his attorney was ineffective in failing to call alibi witnesses. At the motion for new trial hearing, trial counsel testified that she was approached at the start of the trial by one possible alibi witness, who was Reid's co-defendant in an unrelated drug case. After speaking with the witness, counsel advised Reid that the witness should not be called to testify because she was not credible and her testimony would be detrimental to the defense. "[T]he determination of which witnesses to call . . . is a strategic and tactical decision within the exclusive province of the attorney after consultation with the client. [Cit.]" *Fairclough v. State*, 276 Ga. 602, 605 (4) (581 SE2d 3) (2003). Reid has failed to overcome the strong presumption that his lawyer's tactical decision "falls within the broad range of professional conduct ([cit.])." *Myers v. State*, 275 Ga. 709, 713 (4) (572 SE2d 606) (2002). As for Reid's further claim that there were two other potential alibi witnesses, counsel testified that Reid did not give her the names of any such witnesses or tell her anything about an alibi. "It is within the trial court's discretion to resolve conflicting testimony between trial counsel and a defendant at a hearing on motion for new trial. [Cits.]" *Adkins v. State*, 280 Ga. 761, 762 (2) (a) (632 SE2d 650) (2006). Given the attorney's testimony, the trial court was authorized to conclude that "trial counsel cannot be deemed ineffective for failing to locate alibi witness[es] whose existence was not brought to counsel's attention." *Ruffin v. State*, 283 Ga. 87, 91 (12) (d) (656 SE2d 140) (2008).

(b) Reid further contends that his lawyer was ineffective in failing to request a jury charge on voluntary manslaughter as a lesser included offense. At the motion for new trial hearing, the attorney testified that she did not request such a charge because it would have contradicted the defense theory that although Reid was present at the crime scene, he did not shoot the victim, and instead the victim was shot and killed by Reid's co-indictee. As counsel explained, "voluntary [manslaughter] would [mean] he killed him . . . as opposed to he didn't have anything to do with the killing, which was our defense. And I didn't want the jury to . . . just convict him on voluntary."

> Accordingly, the record clearly shows that [Reid's] lawyer made the tactical decision to defend her client on the basis that he was innocent of any offense involving the death of

the [victim], rather than by conceding that he was guilty of some lesser degree of homicide than murder. It is immaterial that another attorney may have made a different strategic decision . . . . "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." [Cit.] " 'Decisions about which jury charges to request are strategic and provide no grounds for reversal unless such tactical decisions are so patently unreasonable that no competent attorney would have chosen them.' (Cits.)" [Cit.]

*King v. State*, supra at 507 (2) (a). Reid has not shown that counsel's tactical decision was patently unreasonable, and therefore it provides no grounds for reversal.

(c) Reid also claims that trial counsel was ineffective in failing to object to the trial court temporarily closing the courtroom for the testimony of two witnesses, because of concerns about the safety of the two witnesses and security in the courtroom. See *Young v. State*, 269 Ga. 478, 479 (2) (499 SE2d 60) (1998) (trial court has discretion to use extraordinary security measures to prevent dangerous or disruptive behavior that threatens trial fairness and safety); *State v. Drummond*, 854 NE2d 1038, 1054 (Ohio 2006) ("maintaining courtroom security and protecting witness safety supported the trial court's limited closure of the courtroom"); *Rovinsky v. McKaskle*, 722 F2d 197, 200 (5th Cir. 1984) (protecting witnesses from intimidation that would traumatize them or render them unable to testify justifies closure). The United States Supreme Court recently reversed a decision from this Court involving closure of a courtroom during voir dire, over the objection of the defendant. *Presley v. Georgia*, 558 U. S. ___ (130 SC 721, 175 LE2d 675) (2010). The Supreme Court held that trial courts are required to consider alternatives to closure even when they are not offered by the parties, and that this Court erred in concluding otherwise. *Presley v. Georgia*, supra. However, this case is distinguishable from *Presley* in that Reid did not object to the closing of the courtroom and the issue of closure is thus raised in the context of an ineffective assistance of counsel claim. Consequently, even if we assume for the sake of argument that trial counsel could have raised a meritorious objection on the ground that the trial court failed to consider alternatives to closure, Reid still must show that he was prejudiced by counsel's decision not to object to the brief closing of the courtroom. *Glover v. State*, 292 Ga. App. 22, 26-27 (3) (663 SE2d 772) (2008); *Hunt v. State*, 268 Ga. App. 568, 576 (6) (a) (602 SE2d 312) (2004); *Turner v. State*, 245 Ga. App. 294, 297-298 (4) (e) (536 SE2d 814) (2000).

The dissent posits that Reid is not required to show prejudice on his ineffectiveness claim because the courtroom closure was a structural error. The improper closing of a courtroom is a structural error requiring reversal only if the defendant properly objected at trial and raised the issue on direct appeal, as was done in *Waller v. Georgia*, 467 U. S. 39 (104 SC 2210, 81 LE2d 31) (1984), cited by the dissent, and as was also done in *Presley v. Georgia*, supra. However, where, as here, the issue of a courtroom closure is raised in the context of an ineffective assistance of counsel claim, prejudice will not be presumed. *Glover v. State*, supra; *Purvis v. Crosby*, 451 F3d 734, 740-741 (III) (11th Cir. 2006); *State v. Butterfield*, 784 P2d 153, 156-157 (Utah 1989).

> It is one thing to recognize that structural errors and defects obviate any requirement that prejudice be shown on direct appeal and rule out an application of the harmless error rule in that context. It is another matter entirely to say that they vitiate the prejudice requirement for an ineffective assistance claim. . . .We cannot hold that attorney error in failing to object to the closing of the courtroom is so likely to result in prejudice that we will presume it, unless we are willing to defy the Supreme Court's specific admonition that when it comes to deciding ineffective assistance claims: "[Attorney errors] cannot be classified according to likelihood of causing prejudice." *Strickland*, [supra at 693]. We cannot dispense with the prejudice requirement for attorney error of this type without defying the Supreme Court's clear holding that except in three limited circumstances, which are not present here, a defendant must show that any error his counsel committed "actually had an adverse effect on the defense." [Cit.] That means he must prove a reasonable probability of a different result. [Cit.]

*Purvis v. Crosby*, supra. Indeed, to hold otherwise would encourage defense counsel to manipulate the justice system by intentionally failing to object in order to ensure an automatic reversal on appeal. *State v. Butterfield*, supra at 157. In this case, Reid

> has failed to demonstrate how the failure to object to partial closure of the courtroom when the [two witnesses] testified resulted in harm. [Cit.] We [therefore] cannot find [a reasonable probability] that the outcome of the trial would have been different had spectators remained in the courtroom during [such] testimony.

*Hunt v. State*, supra. Accordingly, the trial court did not err in rejecting the claim of ineffective assistance of counsel.

*Judgment affirmed. All the Justices concur, except Hunstein, C. J., who dissents.*

HUNSTEIN, Chief Justice, dissenting.

I disagree with the majority's conclusion in Division 3 (c) that Reid's trial counsel was not ineffective in failing to object to the abridgment of Reid's constitutional right to a public trial under the facts of this case.

The right to a public trial may be limited if (1) there is an overriding interest that is likely to be prejudiced; (2) the courtroom closure is narrowly tailored to protect that interest; (3) the trial court considers reasonable alternatives to closure; and (4) the trial court makes findings adequate to support closure. *Waller v. Georgia*, 467 U. S. 39 (II) (B) (104 SC 2210, 81 LE2d 31) (1984). The transcript of Reid's trial shows that the extent of the discussion regarding the reason for closing the courtroom during the testimony of witnesses Wendell Dozier and Latasha Boone consisted of the following:

> STATE: . . . We are pretty much asking for the courtroom to be cleared. . . . And just based on the highly sensitive — and my witnesses feel like their lives are endangered. . . .
>
> THE COURT: What is the defendant's position on that?
>
> DEFENSE: We don't have any position on that, your Honor.
>
> . . .
>
> THE COURT: . . . If you, as an officer of the Court, have proffered to me that they have told you that their[ ] lives are threatened — have been threatened, and given some of the other procedural history in this case that the Court is aware of, I'll make a finding that due to security reasons that the courtroom be cleared for that particular witness. . . .
>
> STATE: . . . I want to make sure that the record is clear, I don't think that he's been directly threatened. He feels like there's indirect threats because he knows people, or more importantly, everyone in this case knows that the witness, Jordian Brown, was shot very short in time after this murder. . . . It won't come out in the evidence, but there is a firm belief by this community that she was shot because she is a witness, and so that leads to the fear in this case, as well as I've had a witness attacked and screwdriver put in his head we also believe as a result of the defendant's

> actions. So I think that there is enough in this case that my witnesses have reason to be fearful.
>
> THE COURT: All right. Do you wish to be heard further on that, madam?
>
> DEFENSE: No, your Honor.
>
> THE COURT: Okay. All right. I'll make a finding for those particular reasons so that — and for reasons of the security of the witnesses I'll clear and close the courtroom to the exception of all necessary personnel that will be required to testify in regards to this particular matter for those limited witnesses only, okay?

Thus, concern for the security of witnesses Dozier and Boone was based in part, if not primarily, on the shooting of witness Brown shortly after the crimes. But Brown survived the shooting and went on to testify *in open court* during Reid's trial, along with several other witnesses to the crimes. No reason was articulated to support closing the courtroom for the testimony of Dozier and Boone when such closure was not sought for others who not only might have been, but actually were, placed in peril because of their testimony. The trial court's findings were clearly inadequate to support closure of the courtroom. See *Waller*, supra, 467 U. S. at 45 (overriding interest must be articulated along with findings specific enough that reviewing court can determine whether closure order was properly entered). Moreover, the trial court failed to consider any alternatives to closure. See *Waller*, supra, 467 U. S. at 48. The recent case of *Presley v. Georgia*, 558 U. S. ___ (130 SC 721, 175 LE2d 675) (2010) makes clear that the trial court has an obligation to consider such alternatives, sua sponte, even when none are offered by the parties.

A defendant asserting an ineffective assistance of counsel claim "must show both prongs of the *Strickland* test, i.e., that counsel's performance was deficient and that this deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)." *Boseman v. State*, 283 Ga. 355, 358 (3) (659 SE2d 364) (2008). Here, the trial court failed to make the necessary findings and consider alternatives to closing the courtroom, and Reid's trial counsel was deficient in failing to object. Although the majority concludes that Reid has not shown prejudice, Op. at 488, Reid is not required to do so in order to obtain relief for a structural error such as a violation of the public-trial right. *Waller*, supra, 467 U. S. at 49. The cases cited by the majority for the proposition that prejudice cannot be presumed when the issue of improper courtroom closure is raised in the context of an ineffective

assistance of counsel claim are not controlling precedent and should not be followed.[*]

Because the trial court erred by rejecting Reid's claim of ineffective assistance of counsel based on the closing of the courtroom during portions of his trial, I must respectfully dissent to Division 3 (c) of the majority opinion and the affirmance of Reid's convictions.

DECIDED FEBRUARY 8, 2010.

*Brian Steel*, for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Peggy R. Katz, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Sara K. Sahni, Assistant Attorney General*, for appellee.

---

[*] I would overrule the Georgia Court of Appeals cases cited on this point as wrongly decided. *Glover v. State*, 292 Ga. App. 22 (3) (663 SE2d 772) (2008) relies on the non-controlling *Purvis v. Crosby*, 451 F3d 734 (III) (11th Cir. 2006); *Hunt v. State*, 268 Ga. App. 568 (6) (a) (602 SE2d 312) (2004) relies on *Turner v. State*, 245 Ga. App. 294 (4) (e) (536 SE2d 814) (2000), which is a case involving the application of OCGA § 17-8-54 (providing for partial closure of the courtroom when a person under the age of 16 is testifying concerning a sex offense).