2018 PA Super 37

| | | |
|---|---|---|
| IN RE: K.J.H., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: L.A.P. AND D.W.P. | : | No.  1226 MDA 2017 |

Appeal from the Order Entered July 11, 2017
in the Court of Common Pleas of Lebanon County,
Orphans' Court at No(s): 2017-158

BEFORE:  OLSON, DUBOW, and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.:                    **FILED FEBRUARY 20, 2018**

L.A.P. (Paternal Grandmother) and D.W.P. (Paternal Grandfather)
(collectively, Paternal Grandparents) appeal from the order entered on July
11, 2017, denying their petition to terminate involuntarily the parental rights
of K.Z. (Mother) as to K.J.H. (Child).  After review, we vacate the order and
remand for proceedings consistent with this opinion.

The orphans' court set forth the factual background of this case as
follows:

> [Child] was born [in February of 2012 to Mother and D.J.H.
> ("Father").  Child] was born opium dependent due to Mother's use
> of heroin during her pregnancy.  [C]hild stayed in the [neo-natal
> intensive care unit] after his birth, but was eventually released
> into Mother's care, and remained in Mother's care until she went
> to prison due to drug use.  When she went to prison, she left
> [C]hild in Father's care; however, Father also has a history of drug
> use, and he [was incarcerated shortly after assuming custody of
> Child].  When Father was no longer able to care for [Child, Paternal
> Grandmother] assumed custody of [C]hild.

* * *

---

* Retired Senior Judge assigned to the Superior Court.

Since 2012, Mother has not provided support, either financially or emotionally, for [C]hild. Mother testified that[,] while incarcerated, she stopped attempting to contact [C]hild because [Paternal] Grandmother stated that [C]hild's therapist said it would be detrimental to hear from Mother. Also, Mother testified that she was told by [a staff member] at Lebanon County Prison that [Paternal] Grandmother did not want Mother to contact her or [C]hild, and[,] if Mother continued to do so, Mother would be charged with harassment.

During Mother's incarceration from 2014 to 2017, Mother attempted to send [C]hild three cards/drawings via her [parents] but none of these cards made it to [C]hild. Only one attempt to send a card to [C]hild was made within six [] months prior to [Paternal Grandparents'] filing of [the termination petition]. Mother is currently out of prison and sober. Mother moved in with her mother [] in Elizabethtown in order to aid her in staying sober. Mother is working and attending drug addiction counseling twice a week and taking an opioid-blocking medication. Mother has three other children beside[s C]hild in this matter. Mother's goal is to gradually start seeing all of her children, and start to work her way to having periods of custody with each child. Currently, Mother is seeing all of her children on a monthly basis, except [C]hild subject to this [p]etition.

On March 15, 2012, Father signed a guardianship agreement granting full guardianship of [C]hild to [Paternal] Grandmother. On May 4, 2012, [via a court order, Paternal] Grandmother was granted temporary physical and legal custody of [C]hild.

Trial Court Opinion, 8/7/17, at 2-4. Mother was incarcerated at Lebanon County Prison from 2014 to 2017 and she never contested this custody arrangement. Mother was released from prison on February 27, 2017.

On February 24, 2017, Paternal Grandparents filed a petition seeking to terminate involuntarily Mother's parental rights and terminate voluntarily Father's parental rights as to Child. On May 18, 2017, the trial court held a

- 2 -

hearing on the petition. On July 11, 2017, the trial court denied Paternal Grandparents' petition to terminate Mother's parental rights.[1] This timely appeal followed. Both Paternal Grandparents and the orphans' court complied with Pa.R.A.P. 1925.

Before we reach the issues presented by Paternal Grandparents on appeal, we address *sua sponte* the orphans' court's failure to appoint counsel for Child, as it is structural error requiring our consideration.[2] The concept of structural error in termination of parental rights cases has been addressed recently by our Supreme Court.

> A structural error is defined as one that affects the framework within which the trial proceeds, rather than simply an error in the trial process itself. Structural errors are not subject to harmless error analysis. Generally, denial of counsel is a structural error, *see Commonwealth v. Martin*, [] 5 A.3d 177, 192 ([Pa.] 2010); although such error usually stems from deprivation of a constitutional right to counsel. Here, by contrast, the right to counsel is statutory.[3] Nonetheless, we do not find

---

[1] Father consented to the termination of his parental rights.

[2] While there is no case directly on point, this Court has addressed *sua sponte* the appointment of counsel for parents. *See In re X.J.*, 105 A.3d 1, 4 (Pa. Super. 2014) (holding this Court may address *sua sponte* the orphans' court's failure to appoint counsel on behalf of a parent in a termination of parental rights proceeding). Moreover, this Court regularly addresses *sua sponte* a Post Conviction Relief Act court's failure to appoint counsel on behalf of an indigent petitioner, even where that individual has not raised the issue. *See e.g. Commonwealth v. Stossel*, 17 A.3d 1286, 1290 (Pa. Super. 2011) (holding "where an indigent, first-time PCRA petitioner was denied his right to counsel—or failed to properly waive that right—this Court is required to raise this error *sua sponte* and remand for the PCRA court to correct that mistake").

[3] Child's statutory right to counsel is clear:

- 3 -

that distinction to be determinative. The same concerns are evident regardless of the derivation of the right. Whether the right to counsel is conferred by constitution or statute, the right having been conferred must be protected.

***In re Adoption of L.B.M.***, 161 A.3d 172, 183 (Pa. 2017) (Opinion Announcing the Judgment of the Court, with five Justices joining this section).

Instantly, Mother was contesting Paternal Grandparents' petition; accordingly, the orphans' court was mandated to appoint counsel. Moreover, Child, due to his minority and lack of representation in the orphans' court, could not raise this issue himself. As we have pointed out:

> The right to counsel belongs to the child, and there is no appointed counsel for the child who could have raised the child's rights in the proceedings before the [orphans'] court. The question goes to a fundamental statutory requisite to the [orphans'] court's decision in this matter.
>
> Upon our careful review of the record in this case and the [orphans'] court's disposition, we must conclude that the [orphans'] court committed an error of law by failing to appoint counsel to represent the child pursuant to 23 Pa.C.S.A. § 2313(a), which directs that the court "shall" appoint such counsel. This Court has previously observed that the word "shall" is usually mandatory or imperative when used in a statute, although whether that word is directory or permissive is dependent upon the intent of the Legislature. Regarding the Legislature's use of

---

The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian *ad litem* to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a).

- 4 -

the word "shall" in section 2313(a) of the Adoption Act, this Court has interpreted the word "shall" in section 2313([a]) as being mandatory, not permissive, and as serving as a direction to the court to appoint counsel.

*In re Adoption of G.K.T.*, 75 A.3d 521, 526 (Pa. Super. 2013) (citing *In re E.F.H.*, 751 A.2d 1186, 1189-90 (Pa. Super. 2000)). *See also In re Adoption of N.A.G.*, 471 A.2d 871 (Pa. Super. 1984) (holding 23 Pa.C.S. § 2313(a) creates a statutory right for a child to have counsel appointed who actively advances his or her needs and welfare and owes loyalty exclusively to him or her; failure to appoint counsel prior to hearing was only harmless because the court eventually appointed counsel and the children did not wish to contest the termination decree); *E.F.H.* (recognizing the unique position of children, who have no one to raise failure to appoint statutorily-required counsel on their own behalf); *G.K.T.* (same).

Based on the foregoing, the orphans' court erred by not appointing counsel for Child, and this Court can and must consider this issue *sua sponte*.[4]

---

[4] The learned dissent is suggesting that this opinion stands for the proposition that "we may raise any structural error *sua sponte*." Dissent, at 3. Such a reading is incorrect, as this opinion speaks to only one structural error, the appointment of counsel for a child in a contested termination of parental rights proceeding. *See generally Commonwealth v. Martin*, 5 A.3d 177, 208-9 (Pa. 2010) (Saylor, J. concurring) ("There appears to be a split of authority among jurisdictions as to whether structural error may be waived. *Compare Mains v. Commonwealth*, 433 Mass. 30, 739 N.E.2d 1125, 1128 n. 3 (2000) ("Our cases have held that even structural error is subject to the doctrine of waiver."), *with State v. Aragon*, 221 Ariz. 88, 210 P.3d 1259, 1262 (Ariz.2009) (declining to apply waiver principles to an error found to have been structural). On the one hand, structural error, by definition, impacts the basic integrity of the trial, which must be assured to maintain public confidence in the criminal justice system. On the other hand, there is the

Accordingly, we vacate the order and remand for proceedings consistent with this opinion.

Order vacated. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

Judge Dubow joins this opinion.

Judge Olson files a dissenting opinion.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/20/2018

---

possibility, if all structural errors are treated as non-waivable, for the defense to omit an objection to assure a reversal on appeal in the absence of an acquittal. **See Reid v. State**, 286 Ga. 484, 690 S.E.2d 177, 181 (2010) (reflecting the position that structural error is waivable).”). Justice Saylor then goes on to support a fact-based assessment of the particular structural error being raised in deciding whether or not the error is waivable.