**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**August 17, 2020**

# In the Court of Appeals of Georgia

A20A0855. ALEXANDER v. THE STATE.

COLVIN, Judge.

On appeal from his conviction for multiple counts of rape, aggravated child molestation, aggravated sexual battery, incest, and false imprisonment arising from his attacks on his two daughters, Stephen Alexander argues that trial counsel was ineffective. We find no error and affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." (Citation omitted.) *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

Thus viewed in favor of the verdict, the record shows that the victims, ages seven and five, were living with their mother, their stepbrother, and their stepfather Alexander in Habersham County when Alexander forced the older victim to give him oral sex, touched her vagina, and attempted to penetrate her vagina with his penis. He also threatened to have the victim taken away from her mother if she told anyone about the abuse. The abuse continued after the family moved to Banks County, where Alexander came into the bedroom shared by the victims, told them that it was "time for [them] to be a woman and grow up" and asked which one of them was "going to go first." Alexander penetrated the younger victim's vagina with his penis and then told her to shower and give him her clothes to wash. Alexander then raped the older victim as well. Afterward, Alexander apologized to his stepdaughters and swore on a Bible that he would not attack them again.

When the attacks on the victims escalated in June 2014 to include forced oral sex and intercourse from behind, and with both girls showing signs of mental trauma, the younger victim told her mother about the abuse. She extended her outcry to a police investigator that same evening. Alexander's computer showed that he had

visited pornographic sites presenting images of incest. A medical examination showed that the younger victim's genitals were lacerated, and Alexander's DNA was found in her vagina. The mother later signed a recantation, later read to the jury, asserting that the girls had taken a used condom from the trash and put its contents on the younger victim's bed and body.

Alexander was charged with four counts of rape, four counts of statutory rape, eight counts of aggravated child molestation, two counts of aggravated sexual battery, four counts of incest, and two counts of false imprisonment. After some of the counts were nolle prossed, and after a trial at which both victims testified, the jury found Alexander guilty of three counts of rape, three counts of statutory rape, one count of aggravated child molestation, two counts of aggravated sexual battery, three counts of incest, and both counts of false imprisonment. After merging some of these counts, the trial court sentenced Alexander to life in prison without the possibility of parole plus 125 years. His motion for new trial was denied.

1. Although Alexander has not asserted that the evidence was insufficient, we have reviewed the record, and conclude that the evidence was indeed sufficient to sustain his conviction. See OCGA §§ 16-6-1 (defining rape), 16-6-3 (defining statutory rape), 16-6-4 (defining aggravated child molestation), 16-6-22.2 (defining

3

aggravated sexual battery), 16-6-22 (defining incest), 16-5-41 (defining false imprisonment); *Tinson v State*, 337 Ga. App. 83, 84-86 (1) (785 SE2d 914) (2016) (evidence including victim's testimony was sufficient to sustain a conviction for rape, incest, sexual battery, and aggravated child molestation); *Jackson*, supra.

2. On appeal, Alexander argues that trial counsel was ineffective when he (a) failed to object to the exclusion of Alexander's immediate family from the courtroom during the victims' testimony, and the general public during the testimony of a child advocate interviewer; (b) failed to object to bolstering by two of the State's witnesses; (c) abandoned his objection to the court's instruction on the proper use of the victims' out-of-court statements; and (d) failed to contest the State's expert testimony concerning the DNA result. We disagree.

To show ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). As to deficient performance, "every effort must be made to eliminate the distorting effects of hindsight," and the trial court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (Citation

4

and punctuation omitted.) *White v. State*, 265 Ga. 22, 23 (2) (453 SE2d 6) (1995). As to prejudice, a defendant need only show "a reasonable probability of a different outcome" due to trial counsel's deficient performance. (Punctuation and footnote omitted.) *Cobb v. State*, 283 Ga. 388, 391 (2) (658 SE2d 750) (2008). Finally, the question of ineffectiveness is a mixed one of both law and fact: "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Footnote omitted.) *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000).

(a) The record shows that before the victims' testimony, the trial court cleared the courtroom, including Alexander's relatives, with the exception of the victims' uncle. Trial counsel did not object to this closure, which also encompassed the testimony of the child advocate interviewer.

OCGA § 17-8-54 provides:

> In the trial of any criminal case, when any person under the age of 16 is testifying concerning any sexual offense, the court shall clear the courtroom of all persons except parties to the cause and their immediate families or guardians, attorneys and their secretaries, officers of the court, victim assistance coordinators, victims' advocates, . . . jurors, newspaper reporters or broadcasters, and court reporters.

5

See generally *Presley v. Georgia*, 558 U. S. 209, 214-216 (130 SCt 721, 175 LE2d 675) (2010) (trial courts are required to consider alternatives to closure even when they are not offered by the parties).

As a preliminary matter, we note that although Alexander testified at the hearing on his motion for new trial that he told his own counsel that he objected to this closure, the trial court did not mention this testimony in its order denying the motion. We are obliged to construe the trial court's silence on this subject as an implicit finding that Alexander's testimony as to it was not credible. See *Hughes v. State*, 296 Ga. 744, 747 (1) (770 SE2d 636) (2015) ("where, as here, the trial court has made extensive findings of fact, we generally must presume that the absence of a finding of a fact that would tend to undermine the conclusion of the trial court reflects a considered choice to reject the evidence offered to prove that fact").

Even assuming that trial counsel performed deficiently by failing to object to the exclusion of Alexander's immediate family from the courtroom, moreover, Alexander cannot show that he was prejudiced thereby because he cannot show that there was "a reasonable probability that the trial result would have been different if not for the deficient performance." (Citation and punctuation omitted.) *Reid v. State*, 286 Ga. 484, 485-486 (690 SE2d 177) (2010). Specifically, "[t]he improper closing

6

of a courtroom is a structural error requiring reversal only if the defendant properly objected at trial and raised the issue on direct appeal[.]" (Citation omitted.) Id. at 488 (2) (c). "[W]here, as here, the issue of a courtroom closure is raised in the context of an ineffective assistance of counsel claim, prejudice will not be presumed." (Citation omitted.) Id. Here, Alexander has not demonstrated any "reasonable probability that the outcome of the trial would have been different had spectators remained in the courtroom during such testimony." Id. Thus the trial court did not err when it denied Alexander's motion for new trial on this ground. Id. at 489 (2) (c).

(b) The record shows that when the mother defended her daughters' truthfulness during her cross-examination, Alexander's trial counsel impeached the mother by introducing her written recantation, which was the centerpiece of his defense. This strategy was objectively reasonable, and trial counsel did not perform deficiently in implementing it by choosing cross-examination over a bolstering objection. *Damerow v. State*, 310 Ga. App. 530, 538 (4) (a) (ii) (714 SE2d 82) (2011) (trial counsel's strategic decision to cross-examine a victim's mother in accordance with the defense's strategy "was not patently unreasonable").

(c) The record shows that the trial court originally instructed the jury that they were "entitled to consider the alleged victims' out-of-court statements as substantive

7

evidence of the defendant's guilt." Trial counsel objected to this portion of the charge on the ground that it was incomplete without the additional instruction that the jury should also consider any inconsistent statements by the victims. The trial court then recharged the jury that it could consider not only the victims' out-of-court statements, but also "a witness's inconsistent statements as [they] may relate to the defendant's innocence." Alexander did not object to the recharge.

Although Alexander now complains that the recharge failed to specify that the term "witness" included the victims in this case, the victims and their interviewers were available for cross-examination, and there was no reasonable possibility that the jury could have been misled by the recharge, which stated the law accurately. See OCGA § 24-8-820 (a) (authorizing the admission of a child victim's hearsay statements if notice is given, "such child testifies at the trial," and "the person to whom the child made such statement is subject to cross-examination"); *Latta v. State*, 341 Ga. App. 696, 703 (3) (802 SE2d 264) (2017) (a victim's out-of-court statement "does not require a showing" of reliability, and "statements admissible under the child hearsay statute do not need to meet the admissibility requirements for prior consistent statements"). There was no deficient performance here. See id. at 705 (5) (b) (pretermitting whether a former pattern charge's language was "a more precise or

8

comprehensive statement of the law than the current pattern charge," a defendant had not shown deficient performance in requesting the current charge concerning a victim's prior inconsistent statements).

(d) Although Alexander also complains that trial counsel was deficient in failing to refute the State expert's testimony that the DNA found in the younger victim's vagina was from semen, we have pointed out that Alexander's strategy was to argue that the victims had obtained a used condom and planted this evidence themselves. There was no deficient performance in choosing this strategy over one consisting of contesting the expert's opinion as to the DNA's origin. See *Dority v. State*, 335 Ga. App. 83, 105 (4) (h) (780 SE2d 129) (2015) (when counsel could show that an expert's testimony was consistent with defendant's innocence, a decision not to refute that testimony with other testimony was not ineffective).

*Judgment affirmed. Reese, P. J., and Markle, J., concur.*